The **METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, Petitioner–Appellant,**

v.

**TENNESSEE SOLID WASTE DISPOSAL CONTROL BOARD, Respondent–Appellee.**

Court of Appeals of Tennessee, Western Section, at Nashville.

Dec. 20, 1991.

Permission to Appeal Denied by Supreme Court March 30, 1992.

Stephen Nunn, Nashville, for petitioner-appellant.

Charles W. Burson, Atty. Gen. and Reporter and Barry Turner, Assistant Atty. Gen., Nashville, for respondent-appellee.

CRAWFORD, Judge.

Metropolitan Government of Nashville and Davidson County (hereinafter Metro) appeals from the order of the chancery court affirming the decision of the Tennessee Solid Waste Disposal Control Board (hereinafter Board) which upheld the assessment against Metro of a civil penalty in the amount of $120,000.00.

On December 7, 1989, the Commissioner of the Tennessee Department of Health and Environment (TDHE) issued his third order against Metro which assessed a contingent civil penalty in the amount of $120,000.00 if Metro failed to submit a suitable site for a new landfill or another environmentally acceptable alternative to TDHE by January 31, 1990.

The penalty was assessed for Metro's violation of T.C.A. § 68–31–104(3) (1987) and Division Rule 1200–1–7. T.C.A. § 68–31–104(3), as pertinent to the issue before us, provides:

68–31–104. **Unlawful methods of disposal.**—It shall be unlawful to:

\* \* \* \* \* \*

(3) Construct, alter, or operate a solid waste processing or disposal facility or site in violation of the rules, regulations, or orders of the commissioner or in such a manner as to create a public nuisance.

Division Rule 1200–1–7, which was promulgated by TDHE pursuant to T.C.A. § 68–31–107, provides in pertinent part as follows:

Regulations Governing Solid Waste Processing and Disposal in Tennessee. Chapter 1200–1–7:

20. Future planning—All owners or operators of registered sanitary landfills within the State of Tennessee shall file with the Department, by May 1 of every year, an estimate of the remaining life of their site. The report to include the original, usable acreage of the site and the remaining unused portion at the time of the report. Where measuring facilities are available, an average monthly weight (or volume) estimate of the incoming wastes shall be supplied. The Department shall have the final determination of the accuracy of the estimate.

A feasibility study as provided by Rule 1200–1–7–.04 must be submitted to the Department for a new site, facility or system one year prior to the completion of the existing facility. *A suitable site for the new facility shall be selected six months before the existing site is completed.* Design and construction plans shall be submitted 90 days prior to the closure of the existing site to assure continued operation in an approved facility site. (Emphasis added).

The assessment was made pursuant to T.C.A. § 68–31–117 which, as pertinent, provides:

**Civil Penalties.**—(a)(1) Any person who violates or fails to comply with any provision of this part or any rule, regulation, or standard adopted pursuant to this part shall be subject to a civil penalty of not less than one hundred dollars ($100) nor more than five thousand dollars ($5,000) per day for each day of violation.

(2) Each day such violation continues shall constitute a separate violation. In addition, such person shall also be liable for any damages to the state resulting therefrom, without regard to whether any civil penalty is assessed.

(b) Any civil penalty or damages shall be assessed in the following manner:

(1) The commissioner may issue an assessment against any person responsible for the violation or damages. Such person shall receive notice of the assessment by certified mail, return receipt requested;

(2) Any person against whom an assessment has been issued may secure a review of the assessment by filing with the commissioner a written petition setting forth the grounds and reasons for his objections and asking for a hearing in the matter involved before the solid

waste disposal control board. Such a hearing shall be a contested case and the provisions of chapter 5 of title 4 shall apply. The solid waste disposal control board shall have the power to enter such orders as in its opinion will best further the purposes of this part;

\* \* \* \* \* \*

(c) In assessing a civil penalty, the following factors may be considered:

(1) The harm done to public health or the environment;

(2) The economic benefit gained by the violators;

(3) The amount of effort put forth by the violator to attain compliance; and

(4) Any unusual or extraordinary enforcement costs incurred by the commissioner.

\* \* \* \* \* \*

■ On January 8, 1990, Metro appealed the Commissioner's third order and petitioned for a hearing before the Board. After a hearing before the Board, an order was entered upholding the full penalty assessment. Metro filed a petition for judicial review of the Board's order in the Chancery Court for Davidson County pursuant to T.C.A. § 4–5–322 (1991). The chancery court affirmed the Board's order, and initially the only issue for review was whether the chancellor erred in affirming the Board's order. However, in Metro's reply brief, it asserts that the contingent penalty is not authorized by the statute and that therefore the Commissioner lacks subject matter jurisdiction to make such an assessment which renders the assessment void ab initio. We must respectfully disagree with Metro's position. What Metro is actually bringing forth is a question of whether an interpretation of the statute authorizes an assessment which is contingent in nature. In the first place, we do not have an assessment that was totally contingent in nature and in the second place we do not believe that this raises an issue of subject matter jurisdiction but merely raises an issue of statutory construction. Although subject matter jurisdiction may be raised for the first time on appeal, other issues may not be so raised.

We will not consider this issue as presented by Metro.

The criteria for the Court's review of the Board's decision is set out in T.C.A. § 4–5–322(h) (1991) which provides:

\* \* \* \* \* \*

(h) The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

(1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority of the agency;

(3) Made upon unlawful procedure;

(4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(5) Unsupported by evidence which is both substantial and material in the light of the entire record.

In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

■ In *Wayne County v. Solid Waste Disposal Control Board,* 756 S.W.2d 274 (Tenn.App.1988), the Court said:

The narrower scope of review used to review an agency's factual determination suggests that, unlike other civil appeals, the courts should be less confident that their judgment is preferable to that of the agency. *See* 2 C. Koch, *Administrative Law and Practice* § 9.4 (1985). Courts do not review the fact issues de novo and, therefore, do not substitute their judgment for that of the agency as to the weight of the evidence, *Humana of Tennessee v. Tennessee Health Facilities Comm'n,* 551 S.W.2d 664, 667 (Tenn. 1977); *Grubb v. Tennessee Civil Serv. Comm'n,* 731 S.W.2d 919, 922 (Tenn.Ct. App.1987), even when the evidence could support a different result. *Hughes v.*

*Board of Comm'rs,* 204 Tenn. 298, 305, 319 S.W.2d 481, 484 (1958).

756 S.W.2d at 279.

The present controversy arises out of Metro's operation of a sanitary landfill known as the "Bordeaux" landfill. In September of 1988, TDHE notified Metro that pursuant to Rule 1200–1–7 Metro must, among other things, select a new landfill site six months before the existing Bordeaux site is complete or filled. TDHE was subsequently advised that the remaining life of the Bordeaux landfill had been re-estimated and that it would reach capacity on March 21, 1990. Based upon this estimate, Rule 1200–1–7 required Metro to select a new landfill site on or before September 21, 1989, which is six months prior to the capacity date of March 21, 1990. Metro was notified on several occasions prior to September 21, 1989, that the site selection must be made by that date.

When Metro did not submit a site selection for the new landfill by September 21, 1989, notice of violation was sent to Metro and on September 29, 1989, TDHE served a Commissioner's order upon Metro assessing a penalty of $20,800.00 for Metro's failure to select a site by September 21, 1989. The order provided, however, that if Metro submitted a suitable site or an acceptable alternative plan within 30 days of September 21, 1989, $20,000.00 of the penalty would be forgiven. Metro did not submit a site as required and appealed this order to the Board for a hearing on the last day allowed for such an appeal. On October 31, 1989, a second order was issued by TDHE assessing a civil penalty of $43,-200.00 against Metro, with $40,000.00 to be forgiven if Metro submitted a site plan or an alternative plan within 30 days of that order. Metro again failed to do what was required and filed an appeal to the Board of this order.

On December 7, 1989, a consent order between TDHE and Metro was approved and entered by the Board assessing a total penalty of $54,000.00 for the two previously appealed assessments.

Also on December 7, 1989, the Commissioner issued his third order, which is the subject of this appeal, against Metro assessing a civil penalty of $120,000.00, with the provision that the entire amount would be forgiven if Metro submitted a suitable landfill site or other environmentally acceptable plan to TDHE by January 31, 1990.

Before the Board, before the chancery court and before this Court, Metro has conceded that it did not comply with the statute and regulation regarding landfill operation. Metro's argument is premised on the size of the fine and not the fact that it was fined.

The third order was issued December 7, 1989. Metro had previously been assessed with penalties for its failure to comply with the regulation. At the time the third order was issued, it was in noncompliance for 37 days, but nevertheless was allowed until January 31, 1990, to comply and totally eliminate any penalty. The record establishes that Metro made no effective effort to comply with any of the three orders until after January 30, 1990. Proof was also introduced that among the factors considered at the time the third order was issued was the increasing potential risk to the public health and environment by Metro's continuing noncompliance. The potential for harm was actually realized to some extent by the time of the hearing before the Board, when proof was introduced concerning illegal dumping after the closing of the Bordeaux landfill and before operation of a new site.

The legislature established this state's public policy concerning solid waste disposal in T.C.A. § 68–31–102 which provides:

**Public policy.**—In order to protect the public health, safety and welfare, prevent the spread of disease and creation of nuisances, conserve our natural resources, enhance the beauty and quality of our environment and provide a coordinated statewide solid waste disposal program, it is declared to be the public policy of the state of Tennessee to regulate solid waste disposal to:

(1) Provide for safe and sanitary processing and disposal of solid wastes;

(2) Develop long-range plans for adequate solid waste disposal systems to meet future demands;

(3) Provide a coordinated statewide program of control of solid waste processing and disposal in cooperation with federal, state, and local agencies responsible for the prevention, control, or abatement of air, water, and land pollution; and

(4) Encourage efficient and economical solid waste disposal systems.

In the case before us, it is clear that Metro was acting contrary to the established public policy by its failure to comply with TDHE's efforts for long-range plans. The record indicates that Metro was given every opportunity and concession but failed to act in conformance with the statute and regulation.

The chancellor's memorandum and order provides:

This is an action to review a decision of the Tennessee Solid Waste Disposal Control Board upholding a civil penalty assessed against plaintiff.

On December 7, 1989, the Commissioner of the Department of Health in his third order against plaintiff assessed a conditional civil penalty in the amount of $120,000 if plaintiff failed to submit a suitable site for a new landfill by January 31, 1990. Plaintiff missed the deadline. Two earlier orders for the same violations had been settled through the payment of an agreed $54,000 penalty. On January 8, 1990, plaintiff appealed the Commissioner's third order to the Board.

A full contested case hearing was held before the Board on April 11, 1990. The Board decided to approve the civil penalty.

Plaintiff does not contest the fine itself, but only the amount. However, the Court will not substitute its judgment for that of the Board. There is both substantial and material evidence in the record which furnishes a reasonably sound basis for the assessment of the civil penalty. The Board's decision was not arbitrary or capricious, nor charac-terized by an abuse or unwarranted exercise of discretion.

The decision of the Board is affirmed. Costs assessed to the plaintiff.

We have reviewed the record in its entirety and concur in the decision of the chancellor. Accordingly, the order of the trial court is affirmed and this case is remanded to the trial court for such further proceedings as may be necessary. Costs of appeal are assessed against Metro.

HIGHERS and FARMER, JJ., concur.