IN THE SUPREME COURT OF TENNESSEE

AT NASHVILLE

FILED

**FILED**

**December 21, 1998**

**Cecil W. Crowson
Appellate Court Clerk**

SHARON WALKER,                    )
                                  )    FILED:  December 21, 1998
         Plaintiff/Appellant      )
                                  )    MAURY CIRCUIT
V.                                )
                                  )    HON. JIM T. HAMILTON,
SATURN CORPORATION,               )    JUDGE
                                  )
         Defendant/Appellee       )    No. 01S01-9703-CV-00048
                                  )
                                  )

For the Plaintiff/Appellant:

J. Anthony Arena
Schulman, LeRoy & Bennett, P.C.
Nashville, Tennessee

For the Defendant/Appellee:

Thomas H. Peebles, IV
Dana C. McLendon
Waller, Lansden, Dortch & Davis
Columbia, Tennessee

**OPINION**

REVERSED                                              BARKER, J.

We granted the plaintiff's motion for full court review of the Special Workers' Compensation Appeals Panel's findings of fact and conclusions of law to determine whether the Panel erred in deciding: (1) that the evidence preponderates against the trial court's finding that plaintiff suffered a permanent partial disability to the right arm; and (2) that the evidence preponderates against an eighty-five percent permanent partial disability to the plaintiff's left arm. For the reasons contained herein, we conclude that the Panel erred in finding no permanent disability to the right arm and in reducing the disability to her left arm to sixty percent. Accordingly, the decision of the Panel is reversed and the trial court's judgment is affirmed.

## BACKGROUND

The plaintiff, Sharon Walker, was thirty-three years old at the time of trial and had been employed by Saturn Corporation since it opened its Spring Hill plant in 1990. She was employed as a member of a work team, and her tasks included installing seat belts and seat ramps into new automobiles and inserting numerous screws into car frames. Those activities required the repetitive use of power tools. On April 22, 1994, Walker reported to the Saturn Medical Department complaining of pain in her left wrist and numbness in her left hand, thumb, and fingers. She was eventually referred to Dr. Paul Parsons and Dr. Paul Thomas for treatment.[1]

Dr. Parsons diagnosed the plaintiff's condition as tenosynovitis and followed a conservative treatment regimen. That treatment proved unsuccessful and when the plaintiff saw Dr. Thomas on June 13, 1994, she complained of persistent left thumb pain. He found that she had "left thumb Dequervain's stenosising tenosynovitis" and recommended surgery to release the pressure from the tendons. Dr. Thomas

---

[1]The record reflects that Walker initially received treatment from Dr. Parsons, but began seeing Dr. Thomas, who was in the same practice group, in June of 1994.

performed surgery on June 15, 1994, and following physical therapy, the plaintiff returned to work on September 14, 1994, with restrictions on the use of her left hand.

On October 26, 1994, plaintiff complained to the Saturn Medical Department of numbness and tingling in her right wrist. She returned to Dr. Thomas with complaints of pain in her right thumb and stated that it worsened with her activities at Saturn. On January 26, 1995, Dr. Thomas diagnosed the plaintiff with "right wrist Dequervain's stenosising tenosynovitis" and placed her on permanent restrictions against repetitive thumb activities such as grasping or pinching. He hoped that the permanent restrictions would avoid any further problems with the employee's right arm.

Ms. Walker again visited Dr. Thomas on March 16, 1995, complaining of numbness in the fourth and fifth fingers of her left hand. Dr. Thomas believed she had a probable entrapment of the ulnar nerve in her left elbow, a diagnosis which was later confirmed with nerve conduction studies. After conservative treatment failed, Dr. Thomas again performed surgery, this time a transposition of the ulnar nerve of the plaintiff's left elbow.

Dr. Thomas testified by deposition that the tenosynovitis in plaintiff's wrists was caused by her work at Saturn. He opined that the plaintiff was able to work, provided she observed the permanent restriction of no repetitive use of the thumbs for pinching or gripping and avoided the use of power tools. He also said that the plaintiff should avoid repetitive bending of her left elbow. Using the AMA guidelines, Dr. Thomas determined that the plaintiff suffered a three percent permanent impairment to her left upper extremity. Dr. Thomas testified on cross-examination that another method of evaluating the permanent impairment could result in an impairment rating of six percent to the left arm. Dr. Thomas did not assign an impairment rating to the

3

plaintiff's right wrist or hand, stating that her complaints in that regard had been sporadic.

On February 6, 1996, Dr. David Gaw performed an independent medical examination on the plaintiff. He reviewed records from Dr. Parsons and Dr. Thomas, and medical records from Saturn Corporation. Relying upon that information, as well as his own examination, he determined that Ms. Walker suffered a five percent permanent impairment to her left upper extremity as a result of the tenosynovitis in the left thumb and wrist. A ten percent permanent impairment resulted from the ulnar transposition, culminating in a combined fifteen percent impairment to her left upper extremity. In accord with Dr. Thomas, Dr. Gaw stated that the plaintiff should avoid repetitive use of her left elbow and wrist. He found no permanent impairment to her right arm because Ms. Walker did not report "any history of problems with that." He admitted, however, that the records he reviewed contained plaintiff's complaints about her right wrist and thumb.

Rebecca Williams, a vocational specialist, testified that she evaluated the plaintiff on August 1, 1996, to assess any vocational disability Ms. Walker suffered from her injuries. Ms. Williams testified that she considered the plaintiff's limitations to both hands and left elbow per the restrictions from Dr. Thomas and Dr. Gaw. She characterized the plaintiff's job as unskilled labor and said that her previous skills from bartending and waitressing were non-transferable and of little use in any other job. Ms. Walker previously obtained a GED and had attended some college and vocational classes, specifically receiving training in keypunch, a now obsolete method of computer data entry.

4

The plaintiff's reading, spelling, and math skills were poor for her age. Following a dexterity examination, Ms. Williams found that the plaintiff lacked dexterity in both hands, which she considered a disabling factor.

Because the plaintiff had no transferable job skills and significant physical limitations, Ms. Williams opined that the plaintiff had no reasonable expectation of employment in the local job market. Of the 10,980 jobs in Maury County for which plaintiff was qualified, only 348 were available to her because of her disability. The number "348" represented the number of jobs and not the number of positions actually open. Considering Ms. Walker's education level and lack of acquired job skills, combined with the permanent restrictions on both hands and her left elbow, Ms. Williams testified that the plaintiff had a ninety-seven percent occupational disability.

The plaintiff testified that her work at the automobile assembly plaint required repetitive activity with her wrist and elbow, including extensive use of power tools during her entire ten-hour shifts. While she had previously worked as a bartender and waitress, she testified that she could no longer perform those jobs because they required excessive use of her wrists and elbow.

Following the first surgery on her wrist, the plaintiff said that she had been unable to return to work as a fully functional team member because of the permanent restrictions.[2] In spite of utilizing the placement process at Saturn, Ms. Walker was unable to find another job at the plant which she could perform given her restrictions. She testified that she was placed on long-term disability leave May 10, 1996, and had not worked since then. She had never done any work that did not involve repetitive

_____

[2]The assembly of automobiles at Saturn is performed in teams. A person may not be a team member unless he or she is able to perform every task assigned to the team. The restrictions on her hands and left elbow prevents the plaintiff from performing all the team activities.

use of the thumbs or bending of the elbow.  In addition to experiencing pain in her hands and wrist, the plaintiff testified that the extension of her left arm is limited, which affects her ability to do housework and play sports.

The trial court found that the plaintiff suffered an eighty-five percent permanent partial disability to both arms and granted her motion for a lump sum award.  Upon review, the Panel found that the expert medical testimony did not support a finding of any permanent impairment to her upper right extremity.  The Panel also determined that the trial court's award of an eighty-five percent permanent partial disability to the plaintiff's left arm was excessive and not supported by the evidence.  The Panel reduced the award based upon a finding that the plaintiff had sustained a sixty percent permanent partial disability to her left arm.

## ANALYSIS

We begin our analysis by stating a few well-settled principles.  Our review of the findings of fact made by the trial court is *de novo* upon the record of the trial court, accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise.  Tenn. Code Ann. § 50-6-225(e)(2) (Supp. 1998).  Because the issue and extent of a permanent vocational disability are questions of fact for the trial court to determine, we also review those issues under the *de novo* standard of review. Jaske v. Murray Ohio Mfg. Co. Inc., 750 S.W.2d 150, 151 (Tenn. 1988); Corcoran v. Foster Auto GMC, Inc., 746 S.W.2d 452, 458 (Tenn. 1988).  In our review, we are not bound by the trial court's factual findings, but rather examine them in depth and conduct an independent examination to determine where the preponderance of the evidence lies. Galloway v. Memphis Drum Serv., 822 S.W.2d 584, 586 (Tenn. 1991).

6

With the foregoing in mind, we first consider whether the evidence supported the trial court's finding that the plaintiff had sustained a permanent partial disability to her right upper extremity. The Panel found no disability to the right arm because the medical experts declined to find any permanent *anatomical* impairment to the plaintiff's right wrist or hand. However, we believe there was other evidence within the record sufficient to support the trial court's finding of permanent industrial disability to plaintiff's right upper extremity.

An anatomical impairment rating is not always indispensable to a trial court's finding of a permanent vocational impairment. See Newman v. National Union Fire Ins. Co., 786 S.W.2d 932, 934 (Tenn. 1990); Corcoran, 746 S.W.2d at 457. In fact, anatomical impairment is distinct from the ultimate issue of vocational disability that the trial court must assess. Wilkes v. Resource Auth. of Sumner County, 932 S.W.2d 458, 463 (Tenn. 1996); Perkins v. Enterprise Truck Lines, Inc., 896 S.W.2d 123, 125 (Tenn. 1994). An employee should not be denied compensation solely because she is unable to present a witness who will testify to the exact percentage of her medical impairment. Corcoran, 746 S.W.2d at 457. As a result, the Panel erred in finding no disability to the plaintiff's right arm based solely on the lack of an anatomical rating to that scheduled member.

In contrast, the evidence established that Ms. Walker has a disabling condition in her right wrist and hand. On August 11, 1993, Dr. Parsons noted in plaintiff's medical records that she had "a little bit" of Dequervain's extensor tenosynovitis in the right wrist. Plaintiff later reported problems with her right wrist to the Saturn Medical Department in October of 1994. Then, on January 26, 1995, Dr. Thomas diagnosed the plaintiff with "right wrist Dequervain's stenosising tenosynovitis."

7

Dr. Thomas characterized the condition as "chronic" and went on to say that grasping or pinching activities at work would worsen her symptoms. As a result, Dr. Thomas placed her on permanent restrictions against repetitive thumb activities such as grasping or pinching. Dr. Thomas' characterization of the condition as "chronic" and the placement of permanent restrictions on the use of her right thumb is sufficient to prove that plaintiff's thumb and wrist condition impaired her ability to use her right arm and that the condition was permanent. See Hill v. Royal Ins. Co., 937 S.W.2d 873, 876 (Tenn. 1996) (basing permanent impairment on the imposition of permanent restrictions where no anatomical impairment was given).

The second issue has been redefined by our determination that the plaintiff suffered a permanent impairment to her right hand. The proper inquiry now is whether the evidence preponderates against the percentage of permanent partial disability to both of plaintiff's arms assessed by the trial court. The Panel reduced the trial court's industrial disability rating to her left arm because of the small anatomical impairment rating and because of its conclusion that the proof showed an impairment only of her ability to work at Saturn. In reaching its decision, the Panel failed to consider relevant evidence regarding how Ms. Walker's earning capacity had been diminished in the open labor market.

The Panel correctly held that a vocational impairment is measured not by whether the employee can return to her former job, but whether she has suffered a decrease in her ability to earn a living. See Corcoran, 746 S.W.2d at 458. This Court stated in Corcoran that a vocational disability results when "the employee's ability to earn wages in any form of employment that would have been available to him in an uninjured condition is diminished by an injury." Id. at 459.

8

In assessing the extent of an employee's vocational disability, the trial court may consider the employee's skills and training, education, age, local job opportunities, anatomical impairment rating, and her capacity to work at the kinds of employment available in her disabled condition. Tenn. Code Ann. § 50-6-241(b) (Supp. 1998); Worthington v. Modine Mfg. Co., 798 S.W.2d 232, 234 (Tenn. 1990); Roberson v. Loretto Casket Co., 722 S.W.2d 380, 384 (Tenn. 1986). Further, the claimant's own assessment of her physical condition and resulting disabilities cannot be disregarded. Uptain Constr. Co. v. McClain, 526 S.W.2d 458, 459 (Tenn. 1975); Tom Still Transfer Co. v. Way, 482 S.W.2d 775, 777 (Tenn. 1972). The trial court is not bound to accept physicians' opinions regarding the extent of the plaintiff's disability, but should consider all the evidence, both expert and lay testimony, to decide the extent of an employee's disability. Hinson v. Wal-Mart Stores, Inc., 654 S.W.2d 675, 677 (Tenn. 1983).

The evidence showed that the plaintiff could not return to her activities at the Saturn facility. The testimony of Rebecca Williams also established that Ms. Walker's disability severely hampered her ability to earn a living in the open labor market in Maury County.

Finally, we consider the plaintiff's own assessment of her condition. She testified that she is no longer able to perform the forty or fifty jobs that she has done in her career in the automobile manufacturing industry because of the restriction on the repetitive use of her elbow and thumbs. Likewise, the plaintiff testified that although she has worked as a bartender and waitress, she could no longer work as a bartender or waitress because of the demand those jobs place on her wrists and elbow. The plaintiff has never done any work that would not require repetitive use of her thumbs for gripping or repetitive bending of the elbow.

Although the medical testimony did not establish a great percentage of anatomical impairment, the trial court obviously gave substantial credence to the testimony of the vocational expert regarding Ms. Walker's ability to work. The record on appeal does not preponderate against the trial court's findings.

In view of Ms. Walker's limited training, her education, considerable medical restrictions, lack of transferable job skills, and the local job opportunities, the plaintiff's capacity to work in areas previously available to her has been significantly reduced by her current disability. Accordingly, we conclude that the trial court's finding of an eighty-five percent permanent partial disability to both arms is supported by the preponderance of the evidence. The record indicates that the employer, Saturn Corporation, complained before the Panel of the propriety of the trial court's judgment commuting the employee's disability award to a lump sum payment. The Panel did not address that issue on the merits. Because Saturn has not raised that issue before us, we will not address it at this time. The judgment of the trial court is affirmed in all respects. Costs are taxed to Saturn Corporation.

_____
William M. Barker, Justice


CONCUR:

Anderson, C.J.,
Birch, Holder, JJ.
Drowota, J., not participating

10