# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### October 6, 2005 Session

## DAVID D. ORRICK v. BESTWAY TRUCKING, INC., ET AL.

**Appeal by Permission from the Special Workers' Compensation Appeals Panel**
**Chancery Court for Warren County**
**No.    7886   Larry B. Stanley, Jr., Chancellor**

---

### No. M2003-02661-SC-WCM-CV - Filed February 21, 2006

---

We granted review in this workers' compensation case to determine whether the Special Workers' Compensation Appeals Panel erred in reducing the trial court's disability award from 33% to 3%. After reviewing the record and the applicable authority, we conclude that reduction of the trial court's award is appropriate. We further conclude, however, that we are unable to enter an appropriate award based on the record before us. We therefore remand to the trial court to enter an award consistent with this opinion.

**Tenn. Code Ann. § 50-6-225(e); Findings of Fact and Conclusions of Law of the Special Workers' Compensation Appeals Panel affirmed in part and reversed in part; remanded.**

E. RILEY ANDERSON, J., delivered the opinion of the court, in which ADOLPHO A. BIRCH, JR., JANICE M. HOLDER, and CORNELIA A. CLARK, JJ., joined. WILLIAM M. BARKER, C.J., not participating.

Frank Buck, Smithville, Tennessee, for the Appellant, David D. Orrick.

Patrick A. Flynn, Columbia, Tennessee, for the Appellees, Bestway Trucking, Inc., Transit Group Transportation, LLC, and Ace, USA.

## OPINION

### Background

The dispute in this case concerns the appropriate percentage of vocational disability. The relevant evidence presented at trial is summarized as follows.

On July 6, 2000, the employee, David D. Orrick ("Orrick"), sustained an injury in the course and scope of his employment with Bestway Trucking, Inc. ("Bestway"). Orrick suffered a

comminuted fracture to his right eye socket when a trailer crank-jack malfunctioned and the handle struck him in the face.

Immediately following the accident, Orrick was treated at the Norton Hospital emergency room in Louisville, Kentucky. He was released to the care of Dr. Merritt J. Seshul of the Murfreesboro Medical Clinic and was treated by Dr. Seshul until September 29, 2000.

Orrick testified that after about a week of light duty (approximately one month after the accident), Bestway put him back to regular service. He drove for three or four days and then started having problems with his face swelling up. He said that while in Ft. Wayne, Indiana, his right eye swelled shut, and he had to wait there for a day and a half until the swelling went down. He then drove back to Nashville. He returned to Dr. Seshul, who recommended that he apply ice packs and stay off work for another week. Dr. Seshul gave Orrick a full release to work on October 2, 2000. However, during the week that Orrick was off work, Bestway went out of business and closed its Nashville terminal.

Orrick testified that about a month and a half after the accident, he began working at his brother-in-law's business, J & K Tool and Die ("J & K"), in McMinnville, Tennessee. He has been employed there ever since. Orrick's job duties include running a lathe, running a mill, and doing miscellaneous work around the two-person shop.

Orrick said that his right cheek and upper right lip remain numb as a result of the accident. He also stated that he experiences swelling and pain on the right side of his face after physical exertion, such as lifting something. The pain forces him to sit down, and occasionally he must leave work. Orrick stated that he only feels pain when he must lift something weighing fifty to sixty pounds, and that he lifts that amount infrequently. He said that his brother-in-law allows him to take breaks as he needs them and that his co-worker assists him as necessary. Finally, Orrick stated that he takes pain medication two to three times per week to relieve the pain.

Additionally, Orrick testified that vibration, such as the vibration from a lawn mower, triggers pain on the right side of his face. He said that truck drivers experience large amounts of vibration, that bumps in the road cause the cab to bump and jerk, and that he did not think he could stand to drive a truck because of the pain. He also said he did not think he would be able to drive a truck because the pain medications he takes are prohibited by trucking regulations.

Orrick was forty-six years old at the time of trial, had been married for twenty-six years and had two grown children. Orrick said that he had been a long distance truck driver for approximately twenty-two years and had been employed as a truck driver for Bestway since 1994. He stated that he has a high school diploma but no other education or training other than the on-the-job training he has received at his brother-in-law's tool and die shop. Orrick said that prior to working as a truck driver, he had done factory work, construction work, and tool and die work.

Orrick testified that in 1999, the last full year that he drove a truck, he earned $44,050. He stated that his income at J & K is approximately 65% of what he earned in his last year as a truck driver (he earns $13.90 per hour working at J & K and stated that he usually works forty hours per week). Orrick testified that although he enjoyed the work at J & K and enjoyed not having to travel, "[i]f I was able to do it, I would probably go back to driving a truck."

Chad Washer testified that he is Orrick's co-worker at the tool and die shop. He said that he had observed that when Orrick strains himself his face swells up, and that he observed Orrick swelling after exertion three or four times per month. Washer tries to do most of the heavy lifting himself, but since he and Orrick are the only two employees in the shop, occasionally Orrick must handle lifting or other strenuous tasks. When Orrick first began work at the tool and die shop, he attempted to mow the yard around the shop. However, the vibration from the mower caused Orrick's face to swell so badly that Washer was forced to take over the mowing tasks. Washer also said that he had observed hot metal chips from the lathe stuck to Orrick's cheek because Orrick could not feel that they were there. He testified that hot metal will burn and stick to the skin.

Orrick's father, James Roland Orrick, and Orrick's wife, Tammy Orrick, also testified that Orrick has difficulty with mowing the grass, because the vibration from the mower causes him pain. They testified that Orrick has swelling and that he takes pain pills two or three times a week.

Anthony Hendricks testified that he had been a truck driver for twenty years and that eighteen-wheeler trucks produce a tremendous amount of vibration. He testified that trucking companies, as well as the federal Department of Transportation and the Tennessee Department of Transportation, have strict rules against driving while under the influence of certain medications, including pain medications.

*Medical and Expert Evidence*

Orrick was treated at the Norton Hospital emergency room in Louisville, Kentucky, immediately following the accident of July 6, 2000. No witnesses testified, and the only information from the emergency department is the discharge sheet Orrick received, indicating that he had "fractured one of the bones in [his] face."

From July 11, 2000 to September 29, 2000, Orrick received treatment from Dr. Merritt J. Seshul of the Murfreesboro Medical Clinic and Surgicenter in Murfreesboro, Tennessee. Dr. Seshul did not testify. However, the record contains a letter from Dr. Seshul stating that a CT scan revealed that Orrick had experienced a comminuted fracture of his right anterior maxillary sinus wall. Dr. Seshul stated that "no other facial fractures were noted." Dr. Seshul also noted facial swelling which had gradually resolved, although leaving paresthesias, or numbness, to a facial nerve. Dr. Seshul treated the injury conservatively, leaving the fracture to heal on its own. Dr. Seshul released Orrick to light duty on July 28 and to full duty on October 2, 2000.

-3-

Dr. David Gaw, an orthopedic surgeon, performed an independent medical examination. Dr. Gaw testified by deposition as well as via a Standard Form Medical Report for Industrial Injuries (a "C-32 form"). See Tenn. Code Ann. § 50-6-235(c)(1) (2005) ("Any party may introduce direct testimony from a physician through a written medical report on a form established by the commissioner of labor and workforce development."). On his C-32 form, Dr. Gaw assigned permanent restrictions of not lifting or carrying more than fifty pounds and limiting exposure to temperature extremes and to fumes. In his deposition, Dr. Gaw stated that he would add restrictions on vibration as well, based on what Orrick told him about experiencing pain from vibration. Dr. Gaw opined that Orrick had sustained an 8% permanent impairment as a result of the facial deformation from his injury, believing that a depression in Orrick's right cheek and nasal bones put him in the middle of the AMA's 6-10% range for facial deformities. Dr. Gaw also assigned a 3% impairment for the numbness to his upper right lip and right cheek, for a total impairment of 11% to the body as a whole. Finally, he testified that although he is an orthopedic surgeon, he had never treated facial fractures.

Dr. Brett Jaffrey, an oral-maxillofacial surgeon, also performed an independent medical examination and testified by deposition. He testified that as a result of the fracture, Orrick had damage to his trigeminal nerve and that the damage caused paresthesia to Orrick's cheek and upper lip. Using the evaluation guidelines from the American Association of Oral and Maxillofacial Surgeons, rather than the AMA Guides, Dr. Jaffrey opined that Orrick had not sustained any permanent impairment. He stated that he did not agree with Dr. Gaw's assessment of 8% for facial deformity, because he was not able to detect any clinically significant malunion or deformity. Finally, Dr. Jaffrey testified that he had treated "at least a hundred" injuries similar to the one Orrick sustained.

Dr. Daniel Lalonde, a neurologist and pain specialist, testified by deposition. He assigned Orrick a 0-14% impairment to the whole body based on his injury. He declined to narrow his impairment rating any further because he stated that he rarely assigns impairment ratings. Dr. Lalonde testified that Orrick had damaged his trigeminal nerve and that the trigeminal nerve is "exquisitely sensitive." He stated that numbness and pain were not mutually exclusive and that in fact patients with damage to the trigeminal nerve often experience extreme pain.

Finally, Patsy Bramlett, a vocational rehabilitation counselor, testified by deposition that in her opinion Orrick did not have any vocational disability. Ms. Bramlett did not interview Orrick but did review his medical records. Based on that review, she testified that Orrick would experience "no loss of access to job opportunities or jobs from the impairment."

*Decisions Below*

The trial court found that Orrick "continues to suffer paresthesias and pain on the right side of his face, accompanied by swelling in his face after physical exertion." The trial court specifically found Orrick to be "a believable and credible witness" and chose to rely "most heavily" on Dr. Gaw's testimony. The court adopted Dr. Gaw's 8% impairment rating for the facial disfigurement

"based on a careful reading of the tables used in the Fifth Edition of the AMA Guides." The court concluded that "[w]hile the Plaintiff has no obvious disfigurement, that is not the criteria called for on page 256 of the Guides in category II." The court also adopted Dr. Gaw's 3% impairment rating for trigeminal numbness in Orrick's face and lip. Finally, the court found that the 2-1/2 times cap did not apply because Orrick was not able to make a meaningful return to work and made a total award of 33%.

The Special Workers' Compensation Appeals Panel reduced the award to 3%. Crediting the opinion of Dr. Jaffrey over that of Dr. Gaw and rejecting entirely Dr. Lalonde's testimony, the Panel concluded that the medical evidence supported only the 3% impairment for damage to the trigeminal nerve. The Panel further found that there was not sufficient evidence to support a vocational disability award.

We accepted review.

## Analysis

Our standard of review of factual issues in a workers' compensation case is de novo upon the record of the trial court, accompanied by a presumption of correctness of the trial court's factual findings, unless the preponderance of the evidence is otherwise. Tenn. Code Ann. § 50-6-225(e)(2) (2005); see also Blankenship v. Am. Ordnance Sys., LLS, 164 S.W.3d 350, 353 (Tenn. 2005). In reviewing documentary evidence such as depositions, however, we extend no deference to the trial court's findings. Ferrell v. Cigna Prop. & Cas. Ins. Co., 33 S.W.3d 731, 734 (Tenn. 2000). Our standard of review of questions of law is de novo without a presumption of correctness. Perrin v. Gaylord Entm't Co., 120 S.W.3d 823, 826 (Tenn. 2003).

We agree with the Panel that the trial court erred in adopting Dr. Gaw's 8% impairment rating for facial disfigurement. Our de novo review of the depositions and other documentary medical evidence leads us to the conclusion that the trial court erred in crediting Dr. Gaw's testimony over that of Dr. Jaffrey with respect to the loss of supporting structure to the face. Dr. Gaw, an orthopedic surgeon, testified that there was a significant depression of the right side of the face, noted visually and by palpation; however, he conceded that he had never treated facial fractures.

Dr. Jaffrey is a practicing oral-maxillofacial surgeon, a specialty that deals with the face, jaws, and trauma. Dr. Jaffrey testified that he had treated at least a hundred patients with similar injuries and that his examination of Orrick revealed no loss of supporting structure of the face. Moreover, although the trial court was correct in stating that the AMA Guides do not require obvious disfigurement to support a 6% to 10% impairment, the Guides do require "loss of supporting structure of part of the face." Therefore, crediting the testimony of Dr. Jaffrey, we reverse the award of 8% for facial disfigurement.

We also agree with the Panel that the trial court correctly found a 3% impairment for damage to Orrick's trigeminal nerve. There seems to be no question in the medical evidence, and counsel for the employer conceded, that Orrick sustained damage to that nerve and that the damage and accompanying paresthesia is permanent. Although Dr. Jaffrey did not assign an impairment rating for this permanent injury under the guidelines issued by his specialty, Dr. Gaw did assign a 3% impairment, which is supported by the AMA Guides.

We part ways with the Panel, however, in our assessment of Orrick's eligibility for a vocational disability award. The Panel concluded that because Orrick was able to perform the duties of a tool and die maker and had not attempted to drive a truck since beginning work at J & K, he was not entitled to an award for vocational disability greater than 3%. In our view, the Panel erred in crediting the testimony of the vocational rehabilitation counselor over Orrick's own testimony as to whether he is able to drive a truck. On the issue of vocational disability, non-expert evidence is relevant, "including the testimony of the injured employee." Corcoran v. Foster Auto GMC, Inc., 746 S.W.2d 452, 458 (Tenn. 1988). "'[T]he claimant's own assessment of his physical condition and resulting disabilities is competent testimony and cannot be disregarded.'" Id. (quoting Tom Still Transfer Co. v. Way, 482 S.W.2d 775, 777 (Tenn. 1972)). Orrick testified that vibration from vehicles and machinery causes him pain and that he must relieve the pain by lying down and/or taking medication. He stated that, although he enjoyed work at the tool and die shop and was glad to have a job that did not require travel, "[i]f I was able to do it, I would probably go back to driving a truck." As the trial court specifically found Orrick to be credible, the Panel erred in crediting the vocational counselor's opinion over Orrick's own assessment of whether he is able to drive a truck.

Moreover, "[v]ocational disability is 'measured not by whether the employee can return to h[is] former job, but whether []he has suffered a decrease in h[is] ability to earn a living.'" Lang v. Nissan N. Am., Inc., 170 S.W.3d 564, 570 (Tenn. 2005) (quoting Walker v. Saturn Corp., 986 S.W.2d 204, 208 (Tenn. 1998)). As we explained in Corcoran,

> The test is whether or not there has been a decrease in the employee's capacity to earn wages in any line of work available to the employee. This is so because the whole theory of the Workmen's Compensation statute is that compensatory income is substituted for loss of earning capacity. That an injured worker is re-employed after an injury is a relevant factor to the determination of the extent of vocational disability, regardless of whether the employee returns to the same employment or to some other work. Nevertheless, this factor is not controlling and is only one of many that must be considered. Despite the employee's return to any employment, *if the employee's ability to earn wages in any form of employment that would have been available to him in an uninjured condition is diminished by an injury*, then that is what is meant by vocational disability for the purposes of Workers' Compensation.

Corcoran, 746 S.W.2d at 459 (emphasis added) (alterations and quotations omitted).

In cases where the employee is eligible for permanent partial disability benefits and is not able to make a meaningful return to work, the maximum vocational disability award permitted under the workers' compensation law is six times the medical impairment rating. Tenn. Code Ann. § 50-6-241(b) (2005). The extent of vocational disability is a question of fact. Corcoran, 746 S.W.2d at 458. When the court applies a multiplier of five or higher, it must "make specific findings of fact detailing the reasons for awarding the maximum impairment." Tenn. Code Ann. § 50-6-241(c). In making such findings, the court must "consider all pertinent factors." Id. These include "lay and expert testimony, employee's age, education, skills and training, local job opportunities, and capacity to work at types of employment available in claimant's disabled condition." Id.

In this case, the trial court found that Orrick was not able to make a meaningful return to work. Orrick returned to work on light duty for one week and drove three or four days of regular duty the next week, until his injury prevented him from continuing to drive. The following week, Bestway went out of business. Given that Bestway went out of business after Orrick had spent less than two weeks back on the job, the evidence does not preponderate against the trial court's finding that Orrick did not make a meaningful return to work.

The trial court set Orrick's vocational disability at 33%, applying a multiplier of three to the total impairment rating of 11%. However, because we have held that the 8% impairment rating based on facial disfigurement was not supported by the evidence, the 33% award exceeds the maximum possible award in this case of 18%. We are therefore constrained to reduce the trial court's award, but are unable to set an appropriate figure based on the record before us. Although, as we have explained, the record supports an award greater than the 3% set by the Panel, it is not clear from the trial record whether the maximum multiplier of six applies. The trial court did not make specific findings of fact as required by Tennessee Code Annotated section 50-6-241(c) as to Orrick's "skills and training," or as to "local job opportunities" or "capacity to work at types of employment available in claimant's disabled condition."

At trial, there was testimony not only from Orrick but from his co-worker, his wife, his father, and a fellow truck driver that Orrick is unable to work under conditions where vibration exists and that a truck driver experiences a tremendous amount of vibration. Additionally, the witnesses testified that Orrick is limited in his ability to lift and do strenuous activities. Orrick had spent twenty-two of his forty-six years as a truck driver, had only a high school education, and had no vocational training. His work experience was all in the area of manual labor, a field in which he is now limited due to the pain he experiences as a result of his injury. Orrick is currently earning 65% of what he earned as a truck driver and testified that he is able to earn that in part due to the good grace of his brother-in-law in accommodating work conditions to his injury. He testified that he will be unable to return to truck driving or perform many types of manual labor. Under these circumstances, the maximum multiplier of six set forth in Tennessee Code Annotated section 50-6-241(b) may well be appropriate, but in the absence of specific factual findings by the trial court we

are unable to order such an award. We therefore remand to the trial court to make specific findings of fact and to enter a new vocational disability award consistent with this opinion.

This injury occurred five and a half years ago, on July 6, 2000. We suggest that in view of the fact that the statute requires that workers' compensation cases be expedited by giving the cases "priority over all cases on the trial and appellate dockets," Tenn. Code Ann. § 50-6-225(f)(1) (2005), that the remand be heard by the trial court within sixty days.

### Conclusion

After considering the applicable authority and the arguments of the parties, we affirm in part and reverse in part the decision of the Special Workers' Compensation Appeals Panel. We affirm the Panel's award of future medical costs and remand to the trial court to enter a vocational disability award consistent with this opinion. Costs of the appeal shall be assessed to the defendants/appellees, Bestway Trucking, Inc., et al.

_____
E. RILEY ANDERSON, JUSTICE