**Betty Sue McCARVER**

v.

**INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, et al.**

Supreme Court of Tennessee, at Nashville.

Oct. 5, 2006 Session.

Dec. 13, 2006.

Michael Lee Parsons, Nashville, Tennessee, for the appellants, Insurance Company of the State of Pennsylvania and Carrier Corporation.

Barry H. Medley and Frank D. Farrar, McMinnville, Tennessee, for the appellee, Betty Sue McCarver.

Paul G. Summers, Attorney General & Reporter; Michael E. Moore, Solicitor General; Kimberly J. Dean, Deputy Attorney General, for the intervenor, State of Tennessee.

## OPINION

WILLIAM M. BARKER, C.J., delivered the opinion of the court, in which JANICE M. HOLDER, CORNELIA A. CLARK, and GARY R. WADE, JJ., and ADOLPHO A. BIRCH. JR., Sp.J., joined.

We granted review of this workers' compensation case to determine whether Tennessee Code Annotated section 16–15–5004(c), granting jurisdiction over workers' compensation cases to the General Sessions Court for Warren County, violates article XI, section 8 of the Tennessee Constitution. The trial court denied the de-

fendants' motion challenging its subject matter jurisdiction and ultimately found the claimant to be 88.2% disabled. We accepted review before the case was heard or considered by a Special Workers' Compensation Appeals Panel. We hold that Tennessee Code Annotated section 16–15–5004(c) does not violate article XI, section 8 of the Tennessee Constitution. We further hold that the preponderance of the evidence supports the trial court's disability award. Therefore, the decision of the trial court is affirmed.

In this workers' compensation case, the threshold issue is whether the General Sessions Court for Warren County had subject matter jurisdiction to hear and decide the case before it.

The plaintiff, Betty Sue McCarver, filed two separate lawsuits for workers' compensation benefits arising out of her employment with the defendant, Carrier Corporation.[1] Her first complaint, filed on June 30, 2004, alleged a gradual injury to her right shoulder occurring in September of 2002. Her second complaint, filed on September 13, 2004, alleged a gradual injury to her left shoulder occurring in October of 2003. After discovery, the two cases were consolidated and set for trial on August 11, 2005, before the General Sessions Court of Warren County.

Prior to the commencement of the trial, the defendants made an oral motion to amend their answer to include as a defense that the General Sessions Court lacked subject matter jurisdiction. The trial court denied that motion. Following a bench trial, the trial court entered its judgment on September 15, 2005, awarding benefits to Ms. McCarver. The defen-

dants appealed both the issue of jurisdiction and the extent of disability. We agreed to hear the case before it was heard or considered by a Special Workers' Compensation Appeals Panel.

### A. Jurisdiction of General Sessions Court for Warren County

 As the trial was about to commence, the defendants made an oral motion to amend their answer, arguing that the court lacked subject matter jurisdiction on grounds that the statute granting jurisdiction to the General Sessions Court was unconstitutional. The trial court denied the motion. Although the motion to amend came late, subject matter jurisdiction cannot be conferred by waiver or consent, and parties to a proceeding may raise the issue of subject matter jurisdiction at any time in any court. *In re Southern Lumber & Mfg. Co.*, 141 Tenn. 325, 210 S.W. 639, 640 (1919); *Metro. Gov't v. Tenn. Solid Waste Disposal Control Bd.*, 832 S.W.2d 559, 561 (Tenn.Ct.App.1991).

The defendants challenge the constitutionality of Tennessee Code Annotated section 16–15–5004(c), which confers jurisdiction over workers' compensation cases to the General Sessions Court for Warren County.[2] Specifically, the statute states:

Effective September 1, 1990, in counties of the third class having a population of not less than thirty-two thousand six hundred (32,600) nor more than thirty-two thousand seven hundred (32,700) according to the 1980 federal census or any subsequent federal census:

(1) The general sessions court shall have concurrent jurisdiction with the cir-

---

1. The Insurance Company of the State of Pennsylvania is also a named defendant in this case, as it is the provider of workers' compensation insurance to Carrier Corporation.

2. We take judicial notice that Warren County is the only county which met the population requirements when the statute became effective.

cuit and chancery courts over workers' compensation cases.

Tenn.Code Ann. § 16–15–5004(c) (1994).

When considering the constitutionality of a statute, we start with a strong presumption that acts passed by the legislature are constitutional. *See Osborn v. Marr*, 127 S.W.3d 737, 740–41 (Tenn.2004); *West v. Tenn. Hous. Dev. Agency*, 512 S.W.2d 275, 279 (Tenn.1974). Any reasonable doubt about whether a statute is constitutional must be resolved in favor of its constitutionality. *See State v. Taylor*, 70 S.W.3d 717, 721 (Tenn.2000). Thus, the defendants have a heavy legal burden in this case in challenging the constitutionality of section 16–15–5004(c). *See West*, 512 S.W.2d at 279.

The defendants argue that Tennessee Code Annotated section 16–15–5004(c) suspends a general law in violation of article XI, section 8 of the Tennessee Constitution. Article XI, section 8 of the Tennessee Constitution provides that "[t]he Legislature shall have no power to suspend any general law for the benefit of any particular individual, nor to pass any law for the benefit of individuals inconsistent with the general laws of the land." Specifically, the defendants argue that Tennessee Code Annotated section 16–15–5004(c) suspends section 50–6–225(a)(1), which confers jurisdiction over workers' compensation cases to circuit, criminal, and chancery courts.[3] Ms. McCarver maintains that the statute does not suspend a gener-

al law and, in any event, is rationally related to legitimate legislative interests.

"Article XI, section 8 is implicated when a statute 'contravene [s] some general law which has mandatory statewide application.'" *Riggs v. Burson*, 941 S.W.2d 44, 53 (Tenn.1997) (quoting *Civil Serv. Merit Bd. v. Burson*, 816 S.W.2d 725, 731 (Tenn.1991)). Even if a statute does suspend a general law, that statute will be upheld unless it creates classifications which are "capricious, unreasonable, or arbitrary." *Riggs*, 941 S.W.2d at 53. In other words, there must be a rational basis for the classification. *See Stalcup v. City of Gatlinburg*, 577 S.W.2d 439, 441 (Tenn. 1978).

The statute which confers jurisdiction over workers' compensation cases to circuit, criminal, and chancery courts specifically states:

In case of a dispute over or failure to agree upon compensation under the Workers' Compensation Law between the employer and employee or the dependents of the employee, either party may file a civil action in the circuit, criminal, or chancery court in the county in which the employee resides or in which the alleged injury occurred. . . .

Tenn.Code Ann. § 50–6–225(a)(1) (1999).[4]

The Workers' Compensation Law, codified at Tennessee Code Annotated sections 50–6–101 to –801, applies uniformly throughout the state. Therefore, we hold

---

3. The statute in effect at times relevant to this action stated that claims may be filed in "circuit, criminal, or chancery court." Tenn. Code Ann. § 50–6–225(a)(1) (1999). It has since been amended to state that claim may be filed in "circuit or chancery court." Tenn. Code Ann. § 50–6–225(a)(2)(A) (2005).

4. Section 50–6–225 now provides that "the parties shall first submit the dispute to the benefit review conference process provided by

the division of workers' compensation." Tenn.Code. Ann. § 50–6–225(a)(1) (2005). Then, if "the parties are unable to reach an agreement at the benefit review conference as to all issues related to the claim, either party may file a civil action as provided in § 50–6–203 in the circuit or chancery court in the county in which the employee resides or in which the alleged injury occurred." Tenn. Code Ann. § 50–6–225(a)(2)(A) (2005).

that section 50–6–225(a)(1), conferring jurisdiction over workers' compensation claims to circuit, criminal, and chancery courts, is a general statute with mandatory statewide application, and section 16–15–5004(c), granting jurisdiction to the Warren County General Sessions Court contravenes that law. However, this does not end our analysis. As stated previously, if there is a rational basis for the classification in question, then the statute meets constitutional muster.

In this case, we conclude that there was a rational basis for granting the Warren County General Sessions Court subject matter jurisdiction over workers' compensation cases. A legislative enactment passes rational basis review "if any possible reason can be conceived to justify the classification." *Stalcup*, 577 S.W.2d at 442. In *Stalcup*, the Court was called upon to make a determination as to whether a reasonable basis for the special classification existed and concisely explained the rules for such a determination:

> It is not necessary that the reasons for the classification appear in the face of the legislation. If any possible reason can be conceived to justify the classification, it will be upheld and deemed reasonable. So long as the statute applies equally and consistently to all persons who are or may come into the like situation or circumstance, it is not objectionable as being based upon an unreasonable classification. There is no general rule by which to distinguish a reasonable from an unreasonable classification, the question being a practical one varying with the facts in each case. Where the reasonableness of the classification is fairly debatable the courts will uphold the classification. The burden of showing that the classification does not rest

upon a reasonable basis is upon the party attacking the statute.

*Id.* at 442 (citations omitted).

The record does not contain any evidence to support either a reasonable or unreasonable classification, as there was never a hearing on this issue. The defendants simply argue in their brief to this Court that there is no rational basis for distinguishing between a county of between 32,600 and 32,700 residents and a county of either 32,599 or 32,701 residents. However, as we noted previously, Warren County was the only county which met the population requirements of the statute when the statute when into effect. Warren County and Van Buren County together make up the thirty-first judicial district. *See* Tenn.Code Ann. § 16–2–506(31)(A) (1994). A single judge sits as the chancellor, circuit court judge and criminal court judge for both counties. *Id.* As the Attorney General argues in his brief to this Court, granting the general sessions court jurisdiction over workers' compensation cases more reasonably allocates the caseload among the available judges. Accordingly, we hold that the defendants have failed to meet their burden of showing that the classification does not rest upon a reasonable basis.

### B. *Extent of Disability*

█ Having determined that the General Sessions Court for Warren County did in fact have jurisdiction to hear this case, we now turn to the facts regarding Ms. McCarver's injuries and subsequent disability.

Ms. McCarver began working for Carrier Corporation in 1999. On October 10, 2002, she injured her right shoulder when she was using a wrench to fasten a frame on an air conditioning unit.

Ms. McCarver was sent to Dr. J. Wills Oglesby, an orthopedic surgeon, who per-

formed surgery on March 31, 2003, to repair a torn rotator cuff in her right shoulder. Dr. Oglesby performed a repeat surgery on the same shoulder on October 23, 2003. Ms. McCarver returned to work and developed similar symptoms in her left shoulder. Dr. Oglesby believed that these symptoms arose from Ms. McCarver's using her left shoulder more than in the past because of the restrictions to her right shoulder.

Dr. Oglesby estimated Ms. McCarver's impairment to be 8% to the body as a whole for her right shoulder injury. He placed the following restrictions on her activities: only occasional use of the right arm outstretched and overhead; lifting a maximum of twenty pounds from floor to waist; lifting a maximum of fifteen pounds from waist to chest; lifting a maximum of five pounds overhead; and frequent lifting of a maximum of ten pounds floor to waist. Carrier could not accommodate these restrictions, and Ms. McCarver was laid off in August 2004.

Ms. McCarver was sent by her attorney to Dr. Walter Wheelhouse, an orthopedic surgeon, for an independent medical evaluation. Dr. Wheelhouse reviewed Ms. McCarver's medical records and performed a physical examination. In his written report, Dr. Wheelhouse provided the following diagnoses: "Bilateral shoulder pain and rotator cuff tear right shoulder, status-post arthroscopic surgery and rotator cuff repair and repeat surgery on her right shoulder" and "Impingement syndrome and painful left shoulder." Dr. Wheelhouse opined that Ms. McCarver had a 14% whole person impairment due to her right shoulder injury and a 5% whole person impairment due to her left shoulder. He stated that she should not perform any work which requires her to extend her arms or place them overhead.

He was of the opinion that she should not lift more than ten pounds.

At the time of trial, Ms. McCarver was fifty-one years old with a high school education. She had some computer training but has trouble with both typing and writing due to an injury to the middle finger of her right, dominant hand. She has received no other special training, nor has she had any management or supervisory experience. Ms. McCarver's past work experience includes work as a car hop, a shipping and receiving clerk, an apprentice tool-and-die worker, a sewing machine operator, a woodcarver, and an office clerk for a nursery.

Two vocational experts testified at trial. Dr. Rodney Caldwell met with Ms. McCarver on June 21, 2005, took a detailed history, reviewed her records, and administered a number of vocational tests. He was of the opinion that, based upon the restrictions placed on Ms. McCarver by Dr. Oglesby, Ms. McCarver has a 90–95% vocational disability. Based upon the restrictions placed by Dr. Wheelhouse, she would have 100% vocational disability. Dr. Caldwell's overall impression was that, as a result of her shoulder injuries, Ms. McCarver's vocational disability is approximately 90%. Judy Wright, a vocational counselor, also met with Ms. McCarver and reviewed the various medical records and reports. She was of the opinion that Ms. McCarver has an estimated 36.2% vocational disability. She believed that jobs, such as that of a clerk or typist, would still be available to Ms. McCarver, despite her limitations.

The trial court entered its judgment on September 15, 2005, finding that the injuries to both shoulders occurred in the course and scope of Ms. McCarver's employment at Carrier. The court found Ms. McCarver to have a 5% medical impairment to her left shoulder and a 13% medi-

cal impairment to her right shoulder. The trial court used a multiplier of 4.9 to find a vocational disability of 24.5% from her left shoulder and 63.7% from her right shoulder, for a total of 88.2% permanent partial disability.

The defendants contend that the trial court's finding of 88.2% disability is excessive and argue that the award should be reduced to a 20% disability to the body as a whole.

■■■■ "The extent of vocational disability is a question of fact to be determined from all the evidence, including lay and expert testimony." *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 629 (Tenn. 1999); *see also George v. Bldg. Materials Corp. of Am.*, 44 S.W.3d 481, 488 (Tenn. 2001). Our standard of review of factual issues in a workers' compensation case is de novo upon the record of the trial court, accompanied by a presumption of correctness of the trial court's factual findings, unless the preponderance of the evidence is otherwise. Tenn.Code Ann. § 50–6–225(e)(2) (2005); *see also Rhodes v. Capital City Ins. Co.*, 154 S.W.3d 43, 46 (Tenn. 2004); *Perrin v. Gaylord Entm't Co.*, 120 S.W.3d 823, 825 (Tenn.2003). When the trial court has seen the witnesses and heard the testimony, especially where issues of credibility and the weight of testimony are involved, the court on appeal must extend considerable deference to the trial court's factual findings. *Houser v. Bi–Lo, Inc.*, 36 S.W.3d 68, 71 (Tenn.2001). In reviewing documentary evidence such as depositions, however, we extend no deference to the trial court's findings. *Orrick v. Bestway Trucking, Inc.*, 184 S.W.3d 211, 216 (Tenn.2006). Conclusions of law are subject to de novo review without any presumption of correctness. *Rhodes*, 154 S.W.3d at 46; *Perrin*, 120 S.W.3d at 826.

■■■■ Anatomical impairment is different from vocational disability and is only one factor to be considered in determining the extent of vocational disability. *See George*, 44 S.W.3d at 488; *Cleek v. Wal–Mart Stores, Inc.*, 19 S.W.3d 770, 774 (Tenn.2000). In assessing the extent of an employee's vocational disability, the trial court should consider all of the following factors: the employee's skills and training, education, age, local job opportunities, anatomical impairment rating, and capacity to work at the kinds of employment available in the employee's disabled condition. *Walker v. Saturn Corp.*, 986 S.W.2d 204, 208 (Tenn.1998); *see also George*, 44 S.W.3d at 488. Moreover, the employee's own assessment of his or her physical condition and resulting disabilities should not be disregarded. *Walker*, 986 S.W.2d at 208.

The court found 5% medical disability for the left shoulder and 13% medical disability for the right shoulder. These figures are very close to those found by Doctor Wheelhouse and not significantly higher than those assessed by Dr. Oglesby.

The trial court then used a multiplier of 4.9 in calculating Ms. McCarver's permanent partial disability. The use of multipliers is outlined in Tennessee Code Annotated section 50–6–241 (2005). Because Carrier terminated Ms. McCarver's employment due to its inability to accommodate her physical limitations, the 2.5 multiplier set forth in section 50–6–241(a)(1) does not apply. Instead, Ms. McCarver could be eligible to receive a maximum permanent partial disability award six times the medical impairment rating. *See* Tenn.Code Ann. § 50–6–241(b). Only if the multiplier is five or greater is the court required to make specific findings of fact detailing the reasons for awarding the maximum impairment. *Id.* at § 50–6–241(c).

The trial court's ultimate findings of vocational disability in the amount of 63.7% to the right shoulder and 24.5% to the left shoulder are also within in the range found by the vocational experts. Dr. Caldwell testified that Ms. McCarver is, in his opinion, 90% vocationally disabled, while Ms. Wright opined that Ms. McCarver is only 36.2% vocationally disabled. Both vocational experts testified live at the trial, putting the trial judge in the best position to judge the credibility of their respective testimony.

■ The trial court also found the testimony of Ms. McCarver herself to be credible. Indeed, even in cases where the evidence allows inferences which could support either party, we are bound by the strong public policy of our workers' compensation law to resolve conflicts and doubts in favor of the claimant. *See Wheeler v. Glens Falls Ins. Co.*, 513 S.W.2d 179, 184 (Tenn.1974). Therefore, we conclude that the evidence does not preponderate against the trial court's findings. Accordingly, we affirm the judgment of the trial court.

### IV. Conclusion

In sum, we hold that Tennessee Code Annotated section 16–15–5004(c), granting jurisdiction over workers' compensation cases to the General Sessions Court for Warren County, does not violate article XI, section 8 of the Tennessee Constitution. Therefore, the General Sessions Court for Warren County properly exercised jurisdiction over this matter. We further hold that the preponderance of the evidence supports the trial court's award of 88.2% permanent partial disability.

Costs of this appeal are taxed to the Insurance Company of the State of Pennsylvania and Carrier Corporation jointly and severally, and their sureties, for which execution may issue if necessary.