FILED
Mar 02, 2020
02:17 PM(CT)
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



**TENNESSEE BUREAU OF WORKERS' COMPENSATION**
**IN THE COURT OF WORKERS' COMPENSATION CLAIMS**
**AT JACKSON**

| | | |
|---|---|---|
| MICHAEL HAYES,<br>Employee,<br>v.<br>JACKSON GOLF & COUNTRY<br>CLUB,<br>Employer,<br>And,<br>TECHNOLOGY INS. CO.,<br>Carrier. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Docket No. 2019-07-0251<br><br>State File No. 51271-2017<br><br><br>Judge Allen Phillips |

---

## COMPENSATION ORDER FOR PERMANENT PARTIAL DISABILITY BENEFITS

---

The issue in this case is the amount of permanent partial disability benefits for Mr. Hayes, a tennis professional. He claimed it was six percent, and the Club claimed it was three. After considering the evidence, the Court holds Mr. Hayes sustained a six-percent permanent partial disability to the body as a whole.

### History of Claim

Mr. Hayes began playing tennis at age five and turned professional at eighteen. He was once the number-six ranked player in his native England and competed for his country in international events. Over the years, he played against top-ranked professionals.

Mr. Hayes played collegiately at the University of Memphis. While there, he learned of an opening for a tennis professional at the Club and applied. Mr. Hayes was hired by Jay Veazey, the Club's head professional.

On May 11, 2017, Mr. Hayes felt a "tweak" in his right shoulder while serving a ball. The incident so affected his play that he reported it to Mr. Veazey, who recommended that Mr. Hayes see Dr. Kelly Pucek, an orthopedic surgeon who had

1

previously treated him for a shoulder injury. Mr. Hayes took Mr. Veazey's advice, and the Club later accepted Dr. Pucek as the authorized treating physician.

Testifying by deposition, Dr. Pucek said Mr. Hayes reported the "sudden onset of pain" while serving and that he sensed a loss of "some velocity" on his serves. Dr. Pucek diagnosed impingement syndrome and a possible labral tear, later confirmed by an MRI. Dr. Pucek surgically repaired the tear and performed a sub-acromial decompression for the impingement. He testified that shoulder surgery on a tennis professional is "more concerning" than on an attorney, for example, because of the overhead activity required to play tennis.

Two months after the surgery, Dr. Pucek found Mr. Hayes's motion was not improving, but he added that labral repair patients are "always a little slower" in recovering motion. However, after two more months, he found Mr. Hayes lacked only some external rotation of his shoulder, while all other planes of motion were "in pretty good shape." So, he released Mr. Hayes to regular duty. Mr. Hayes returned to work, but for the next two years voiced complaints about his shoulder, which Dr. Pucek described as "concerning," and possibly "long term."

Regarding his impairment rating, Dr. Pucek testified that the *AMA Guidelines to the Evaluation of Permanent Impairment, 6th Edition*, allow for a "rating based on motion or the surgical procedure." He thought that a rating based on the surgical procedure was more appropriate because Mr. Hayes lacked only some external rotation. Thus, under the diagnosis-based method, Dr. Pucek assigned Mr. Hayes two-percent permanent impairment to his upper extremity for the labral repair and one-percent impairment for the impingement. These combined for a rating of three percent to the upper extremity, which converted to two-percent impairment to body as a whole. However, after his deposition, Dr. Pucek corresponded with Mr. Hayes's counsel stating that had he been asked, he would have increased the rating to three percent to the body because of Mr. Hayes's ongoing complaints. He based his increased rating on "modifiers" found in Table 15-5 of the *Guides*, a table addressing several diagnoses including labral tears, but did not elaborate on what modifiers he used. Nevertheless, the parties agreed to the change in rating.

Mr. Hayes saw Dr. Samuel Chung for an independent medical evaluation (IME). Dr. Chung testified that Mr. Hayes was thirty-two years old and had taught tennis at the Club for seven years. He said Mr. Hayes reported "acute" pain when serving a ball and then noted "very little force behind" his serve. He noted Mr. Hayes complained of continued difficulty with his serve after surgery, describing that he could not fully serve overhead but rather used a more "sideways" motion. At the time of the IME, Dr. Chung said Mr. Hayes thought his motion was "if anything . . . getting worse."

2

Dr. Chung confirmed the veracity of those complaints when he examined Mr. Hayes, finding "a mild degree of motion loss in almost all planes of his right shoulder." Dr. Chung specifically documented the actual degrees of Mr. Hayes's motion in extension, flexion, adduction, abduction, and internal rotation and, because of the losses in those planes, thought "range of motion [was] the biggest factor" of impairment. Thus, Dr. Chung used Table 15-34 of the *Guides,* titled "Shoulder Range of Motion," to assess six-percent impairment to the body as a whole. He explained that "the main rationale for me using the range of motion is really directed by the *Guide's* [sic] direction because if there is an injury and recovery of a certain diagnosis, unless it's completely normal motion, we . . . are, you know asked to use the range of motion. And that's what I did."

Mr. Hayes was the only witness at the hearing. He explained his injury continues to affect his service velocity, describing a decrease from 115 to 80 miles per hour. Because of that, he obtained a machine that simulates service. Further, he said he hoped he might play in more tournaments in the future, but now he cannot. Finally, he testified that he reduced his on-court instruction time from approximately forty hours per week down to roughly thirty. Because of Mr. Hayes's lay testimony, his counsel argued that Dr. Chung's rating was more in line with the true effects of the injury.

For its part, the Club objected to the relevance of Mr. Hayes's testimony regarding the ill effects of his injury, asserting instead that the Court should focus on the ratings. The Court overruled those objections.

As to the ratings themselves, the Club argued Dr. Pucek, as the authorized treating physician, is presumed correct, and that Mr. Hayes did not rebut that presumption by a preponderance of the evidence. *See* Tenn. Code Ann. § 50-6-204(k)(7) (2019). In support, it pointed to a section of the *Guides,* Chapter 15, page 461, which provides the diagnosis-based method is the "method of choice for calculating impairment," and that "range of motion is used principally as a factor in the Adjustment Grid." Finally, the Club argued that the *Guides* make no distinctions between occupations, whether a professional tennis player or an attorney, the comparative dichotomy used by Dr. Pucek.

**Findings of Fact and Conclusions of Law**

Mr. Hayes must establish the extent of his permanent disability by a preponderance of the evidence. Tenn. Code Ann. § 50-6-239(c)(6). The extent of his disability is a question of fact, determined by a consideration of all of the evidence, including both expert and lay testimony. *Duignan v. Stowers Mach. Corp.*, No. E2018-01120-SC-R3-WC, 2019 Tenn. LEXIS 224, at *22 (Tenn. Workers' Comp. Panel June 19, 2019).

3

When considering the expert proof, the Court considers the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information by other experts. *Bass v Home Depot USA, Inc.*, 2017 TN Wrk. Comp. App. Bd. LEXIS 36, at *9 (May 26, 2017).

Applying those factors here, the Court first finds both doctors qualified to assess a rating; Dr. Pucek is a board-certified orthopedic surgeon, and Dr. Chung is a specialist in physical medicine and rehabilitation, as well a certified independent medical examiner. They are on equal footing.

Second, as to the circumstances of their evaluation, the Court finds Dr. Pucek had the most contact with Mr. Hayes, seeing him on many occasions over two years as opposed to Dr. Chung's one-time evaluation. It seems reasonable the physician having greater contact with the employee would have the advantage to provide a more accurate opinion. *Orman v. Williams Sonoma, Inc.*, 803 S.W.2d 672, 677 (Tenn. 1991). However, Dr. Chung specifically detailed Mr. Hayes's loss of motion using a methodology he said is dictated by the *Guides*. Conversely, though Dr. Pucek agreed the *Guides* allow a range-of-motion loss rating, he did not document any measurements of Mr. Hayes's shoulder motion. The Court takes judicial notice that the *Guides* provide that if more than one method of rating exists, then the evaluator should use the method producing the higher rating. *Guides*, page 2, Table 2-1 n.12. The Court takes further notice that Table 15-5, the table used by Dr. Pucek for his diagnosed-based rating, provides that range of motion may be used as an alternative to the diagnosis-based rating. *Guides*, page 405, Table 15-5, footnote.

Third, the information available to the experts in assessing impairment supports Dr. Chung. As noted, he documented his specific measurements in all planes of motion. Contrast this with Dr. Pucek's testimony that most planes of motion were "in pretty good shape."

Finally, the factor of which information was important to other experts again supports Dr. Chung. Dr. Pucek expressed his concern with Mr. Hayes's ongoing complaints and surmised they might become long-term. Even more compelling was Dr. Chung's explanation of how lost motion affects a professional tennis player.

In support of its position that Dr. Pucek was correct, the Club cited *Marshall v. Pinnacle*, No. W2015-00382-SC-R3-WC, 2016 Tenn. LEXIS 751 (Tenn. Workers' Comp. Panel Oct. 27, 2016). There, a Workers' Compensation Panel contrasted the impairment rating of a Medical Impairment Rating Registry (MIRR) physician, whose rating also carries a presumption of correctness, with that of an IME physician like Dr. Chung. The Panel found the trial court erred in finding the IME rating rebutted the MIRR physician by *clear and convincing* evidence. Specifically, that IME physician testified he

4

*did not* follow the directives of the *Guides* to assess the rating because he disagreed with the *Guides's* recommended methodology.

*Marshall* is distinguishable. Unlike the IME physician there, Dr. Chung testified he *did* follow the *Guides's* directives when assessing his rating. Moreover, Dr. Pucek, whose rating is entitled to a presumption of correctness, agreed the *Guides* allow use of range-of-motion. Thus, the only expert proof here is that the *Guides* allow a range-of-motion impairment, and the only material difference is that Dr. Chung actually measured and documented the lost motion. Moreover, the standard to rebut Dr. Pucek is lower than the applicable standard in *Marshall*, a preponderance as opposed to clear and convincing evidence.

Turning to the lay testimony, the Court is guided by longstanding authority that the employee's own assessment of his physical condition and resulting disability is competent testimony not to be disregarded. *Orrick v. Bestway Trucking, Inc.*, 184 S.W.3d 211, 217 (Tenn. 2006). Thus, the Court respectfully disagrees with the Club's assertion that the Court's focus remain primarily on the ratings. Here, Mr. Hayes's testimony is particularly important when he described the detrimental effects of his injury.

Namely, Mr. Hayes said he began playing tennis at age five, twenty-seven years ago, and became a professional by age eighteen, playing at an international level. His level of experience provides him keen insight into how his injury affects his play. He described his loss of service velocity, approximately thirty-five miles per hour slower post-injury, and he doubted he could play in tournaments. Importantly, his injury caused him to lighten his work schedule by ten hours per week, a loss of earning capacity directly reflective of the extent of disability. This lay testimony supports Dr. Chung's rationale for the higher rating.

Finally, the Court finds Mr. Hayes credible. His testimony was calm, self-assured, confident, forthcoming, reasonable, and honest. *See Kelly v. Kelly*, 445 S.W.3d 685, 694-695 (Tenn. 2014) (discussing indicia of witness credibility). He was consistent in his history and resolute in his complaints, and he neither exaggerated nor embellished his symptoms. Instead, the Court was convinced he provided an honest assessment of the effects of his injury.

In totality, the Court holds Mr. Hayes rebutted the presumption of correctness attached to Dr. Pucek's rating and that Dr. Chung's rating is the more accurate. It follows that Mr. Hayes is entitled to an award of six-percent permanent partial disability to the body as a whole under Tennessee Code Annotated section 50-6-207(3), calculated as six percent times 450 weeks times the stipulated compensation rate of $888.00, or $23,976.

**IT IS, THEREFORE, ORDERED** as follows:

5

1. Jackson Country Club shall pay Mr. Hayes permanent partial disability benefits of $23,976 under Tennessee Code Annotated section 207(3)(A) based on Dr. Chung's six-percent permanent partial impairment rating to the body as a whole.

2. Jackson Country Club will continue to pay for reasonable and necessary future medical benefits related to the injury under Tennessee Code Annotated section 50-6-204(a)(1)(a). Dr. Pucek remains the authorized treating physician.

3. The Court assesses the $150.00 filing fee to Jackson Country Club to be paid to the Court Clerk under Tennessee Compilation Rules and Regulations 0800-02-21-.06 (August, 2019) within five business days of this order becoming final, and for which execution may issue if necessary.

4. Jackson Country Club shall file a Statistical Data Form (SD-2) with the Court Clerk within five business days of the date this order becomes final.

5. Absent an appeal, this order shall become final thirty days after issuance.

**ENTERED March 2, 2020.**

**Judge Allen Phillips**
**Court of Workers' Compensation Claims**

## APPENDIX

Exhibits:
1. First Report of Work Injury
2. Deposition of Dr. Kelly Pucek
3. Deposition of Dr. Samuel Chung
4. Collective Medical Records

Technical record:
1. Petition for Benefit Determination
2. Dispute Certification Notice (DCN)
3. Request for Scheduling Hearing
4. Scheduling Order
5. Post-Discovery DCN
6. Pre-Compensation Hearing Statement

7. Employer's Compensation Hearing Brief
8. Employee's Witness and Exhibit List

## CERTIFICATE OF SERVICE

I certify that a copy of this Compensation Hearing Order was sent as indicated on March 2, 2020.

| Name | Certified Mail | First Class Mail | Via Email | Service Sent To: |
|---|---|---|---|---|
| Charles M. Purcell and Katherine C. Wallace, Attorneys for Employee | | | X | chuck@psclegal.com katie@psclegal.com |
| Rosalia Fiorello, Attorney for Employer | | | X | rfiorello@wimberlylawson.com |

_Penny Shrum_
**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**



<u>Compensation Hearing Order Right to Appeal</u>:

If you disagree with this Compensation Hearing Order, you may appeal to the Workers' Compensation Appeals Board or the Tennessee Supreme Court. To appeal to the Workers' Compensation Appeals Board, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within thirty calendar days* of the date the compensation hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. A licensed court reporter must prepare a transcript and file it with the court clerk *within fifteen calendar days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within fifteen calendar days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement of the evidence before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. After the Workers' Compensation Judge approves the record and the court clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties. The appealing party has *fifteen calendar days* after the date of that notice to submit a brief to the Appeals Board. *See the Practices and Procedures of the Workers' Compensation Appeals Board.*

**To appeal your case directly to the Tennessee Supreme Court, the Compensation Hearing Order must be final and you must comply with the Tennessee Rules of Appellate Procedure. If neither party timely files an appeal with the Appeals Board, the trial court's Order will become final by operation of law thirty calendar days after entry.** *See* **Tenn. Code Ann. § 50-6-239(c)(7).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

Docket No.: _____

State File No.: _____

Date of Injury: _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____  ☐ Motion Order filed on _____

☐ Compensation Order filed on_____  ☐ Other Order filed on_____

issued by Judge _____.

### Statement of the Issues on Appeal
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

### Parties
**Appellant(s) (Requesting Party):** _____ ☐ Employer ☐ Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 ____.

_____
*[Signature of appellant or attorney for appellant]*



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____  2. Address:_____

3. Telephone Number: _____  4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

6. I am employed by: _____

My employer's address is: _____

My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | | |
|---|---|---|---|---|
| AFDC | $ _____ | per month | beginning | _____ |
| SSI | $ _____ | per month | beginning | _____ |
| Retirement | $ _____ | per month | beginning | _____ |
| Disability | $ _____ | per month | beginning | _____ |
| Unemployment | $ _____ | per month | beginning | _____ |
| Worker's Comp. | $ _____ | per month | beginning | _____ |
| Other | $ _____ | per month | beginning | _____ |

LB-1108 (REV 11/15)                                                    RDA 11082

9. My expenses are:

Rent/House Payment $ _____ per month    Medical/Dental  $ _____ per month

Groceries         $ _____ per month      Telephone       $ _____ per month

Electricity       $ _____ per month      School Supplies $ _____ per month

Water             $ _____ per month      Clothing        $ _____ per month

Gas               $ _____ per month      Child Care      $ _____ per month

Transportation    $ _____ per month      Child Support   $ _____ per month

Car               $ _____ per month

Other             $ _____ per month (describe: _____ )

10. Assets:

Automobile              $ _____        (FMV) _____

Checking/Savings Acct. $ _____

House                   $ _____        (FMV) _____

Other                   $ _____        Describe: _____

11. My debts are:

Amount Owed                     To Whom

_____             _____

_____             _____

_____             _____

_____             _____

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____
APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____
NOTARY PUBLIC

My Commission Expires:_____

LB-1108 (REV 11/15)                                        RDA 11082