**FILED**
**Dec 22, 2021**
**02:05 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**





### TENNESSEE BUREAU OF WORKERS' COMPENSATION
### IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT JACKSON

| | | |
|---|---|---|
| JO CAROL EDWARDS, | ) | Docket No. 2021-07-0056 |
|     Employee, | ) | |
| v. | ) | |
| PEOPLEASE, | ) | |
|     Employer, | ) | |
| and | ) | State File No. 800069-2021 |
| VANLINER INS. CO, | ) | |
|     Carrier, | ) | |
| and, | ) | |
| ABIGAIL HUDGENS, | ) | |
| ADMINISTRATOR of the BUREAU OF | ) | Judge Allen Phillips |
| WORKERS' COMPENSATION, | ) | |
| SUBSEQUENT INJURY FUND. | ) | |

---

### EXPEDITED HEARING ORDER
### FOR MEDICAL AND TEMPORARY DISABILTY BENEFITS

---

Ms. Edwards requested medical and temporary disability benefits for injuries sustained in a truck accident. Peoplease disputed a causal relation of some of the injuries and the need for evaluation of others. After hearing the issues at an Expedited Hearing on December 14, 2021, the Court holds Ms. Edwards is entitled to some of the requested benefits.

### History of Claim

On August 14, 2020, Ms. Edwards sustained injuries when the right front tire of the truck she was driving blew out, causing the truck to strike a bridge and leave the road. She said both of her knees repeatedly struck the dashboard during the crash, and her chest hit the steering wheel. She explained that she sat close to the steering wheel because of her height, and that position also caused her knees to hit the dashboard as it was pushed into the cab.

1

Peoplease paid for Ms. Edward's initial treatment at an emergency room and primary care clinic. It then provided a panel of orthopedic surgeons that included Dr. Jason Hutchison and Dr. Timothy Sweo. Ms. Edwards chose Dr. Hutchison.

On September 14, Dr. Hutchison recorded Ms. Edwards's history and noted she complained of pain and loss of motion in both knees. He took x-rays that revealed severe arthritis in both knees, noting the "ultimate treatment is going to be a total knee replacement." He said that the type of arthritis in Ms. Edwards's knees usually produces pain, loss of motion, and trouble standing and walking.

Dr. Hutchison testified the arthritis was pre-existing, but the accident caused an "exacerbation of symptoms." However, "according to [his] understanding of the law" an exacerbation of symptoms is not "compensable or something that should be considered for treatment under workers' compensation." Thus, he believed Ms. Edwards's need for treatment was not "greater than 50%" related to the accident and that it caused no anatomic change in her knees.

Dr. Hutchison testified he could not, "to a reasonable degree of medical certainty" say what caused Ms. Edwards's symptoms but did not rule out that they were caused by the accident. Because he did not record Ms. Edwards's pre-accident history, Dr. Hutchison did not "know for certain that she did or did not have symptoms" before. But he did say that Ms. Edwards's pain complaints were consistent with someone who "has an accident which causes an exacerbation of underlying symptoms" of arthritis.

Dr. Hutchison injected Ms. Edwards's knees and offered to treat her under private insurance. Ms. Edwards declined his offer but instead went to Dr. Timothy Sweo on her own.

On September 24, Dr. Sweo noted the same complaints as Dr. Hutchison and wrote that Ms. Edwards reported she had experienced them for a "few months." He did not record a history of the accident. Dr. Sweo made the same diagnosis as Dr. Hutchison and believed Ms. Edwards would require bilateral knee replacements. He recommended she undergo the surgery, but Ms. Edwards deferred.

Ms. Edwards returned to Dr. Sweo on November 17, and he said she was "adamant" that she had no problems with her knees until the accident. She wanted an MRI of her left knee, and Dr. Sweo agreed. The MRI showed, in addition to the arthritis, a fracture in the posterior portion of the knee. Dr. Sweo said the fracture "fits with her history" of the accident and, although Ms. Edwards ultimately would have needed a knee replacement anyway, the fracture was "the reason she had to have it done at that point" because it "destabilized" the knee. As to a specific relation, Dr. Sweo attributed "more than 51% of the cause" of the problems in both knees and need for surgery to the accident.

Peoplease asked Dr. Hutchison to see Ms. Edwards again after Dr. Sweo provided his opinions. Specifically, on January 4, 2021, Dr. Hutchison noted Dr. Sweo had scheduled the left knee replacement under Ms. Edwards's personal insurance but that she was pursuing workers' compensation benefits. He agreed the fracture likely occurred in the accident but called Dr. Sweo's opinion that the fracture destabilized her knee "nonsensical." However, he said that if Ms. Edwards now suffers from swelling, pain, and disability, then one might say the accident made her knee unstable, adding it was "a very common situation where someone has an accident, and their knee arthritis hurts worse." As to the right knee, Dr. Hutchison said the diagnosis was "not markedly different."

Dr. Hutchison also addressed Ms. Edwards's chest injury for the first time. He said he did not treat chest injuries but added it was "not a very big problem at this point." He did not think referral to a chest surgeon, his usual course, was warranted. He added most chest injuries are treated conservatively. He did mention the foot injury.

Dr. Sweo similarly addressed the alleged chest and foot injuries, noting that "no treatment [was] currently required for those."

Dr. Sweo ultimately performed the left knee replacement in February under Ms. Edwards's personal insurance, and he has not released Ms. Edwards from his care. The parties agreed that she has been off work since Dr. Sweo began his care in September 2020, and they agreed to a weekly compensation rate of $772.31.

Ms. Edwards was the only witness at the hearing. She said she had driven a truck for twenty years with no problems with her knees until the accident. But, after the accident, she had pain, swelling and trouble walking. The Court observed her limping and using a cane. She said she did not know why Dr. Sweo did not record the accident at her first visit with him, stating that she absolutely told him about it.

Ms. Edwards requested the following benefits:

1) Payment of medical bills related to the left knee replacement to the extent that her personal health insurance did not pay;
2) Payment by Peoplease for a right knee replacement as recommended by Dr. Sweo;
3) Evaluation of her chest and right foot injuries;
4) Payment of temporary total disability from September 24, 2020, and ongoing;
5) Payment for an underpayment of temporary disability because Peoplease initially paid her at the wrong rate; and
6) Mileage reimbursement.

Ms. Edwards said the requested medical bills were those that her private insurance did not pay. She is also ready to undergo the right knee replacement by Dr. Sweo. Ms.

Edwards contended Peoplease paid her temporary total disability from the date of the accident until Dr. Hutchison gave his causation opinion on September 14, but it paid her at a lower weekly rate than that stipulated by the parties. As to her mileage reimbursement request, Ms. Edwards admitted some of the trips were near her home and some were not to medical appointments.

For its part, Peoplease focused on the alleged knee injuries. It argued Ms. Edwards could not recover benefits because the accident aggravated Ms. Edwards's pre-existing condition only by increasing her pain without any anatomic change. Relying on *Trosper v. Armstrong Wood Prod., Inc*., 273 S.W.3d 598, 607 (Tenn. 2008), Peoplease argued that a work injury must advance the severity of a pre-existing condition to be compensable. Here, Peoplease contended both Dr. Hutchison and Dr. Sweo attributed Ms. Edwards's need for knee replacements to arthritis, which was not "advanced" by the accident.

Peoplease did not contest the reasonableness and necessity of the medical bills related directly to Dr. Sweo's surgery but did contest the relation of other billing. Peoplease also contested the amount of the mileage reimbursement on grounds that some of the requested reimbursement amounts were not greater than fifteen miles from Ms. Edwards's home or were for trips not related to medical treatment.

The Fund agreed with Peoplease's position regarding the knee injuries.

**Findings of Fact and Conclusions of Law**

At an Expedited Hearing, Ms. Edwards must show she would likely prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1) (2021).

*Knee injuries*

Tennessee law has long held that the employee's own assessment of her physical condition and resulting disability is competent testimony not to be disregarded. *Orrick v. Bestway Trucking, Inc*., 184 S.W.3d 211, 217 (Tenn. 2006). Here, Ms. Edwards testified that she had no problems with her knees before the accident, and the Court believes her. Further, her complaints align with those Dr. Hutchison said he would expect from someone whose arthritis is made symptomatic. Ms. Edwards was honest, forthcoming, and succinct, and the Court finds her credible. *See Kelly v. Kelly*, 445 S.W.3d 685, 694-695 (Tenn. 2014) (discussing indicia of witness credibility).

As to the medical proof, Dr. Hutchison's causation opinions, as the panel-selected physician, are presumed correct subject to rebuttal by a preponderance of the evidence. Tenn. Code Ann. § 50-6-204(k)(7). However, the Court finds resolution of this issue does not turn solely on whether Ms. Edwards rebutted Dr. Hutchison's opinion.

4

Instead, the Court looks to Dr. Hutchison's incorrect assumption as to what constitutes a compensable injury. Specifically, Dr. Hutchison expressed his opinion that an exacerbation of a pre-existing condition is not compensable. However, an aggravation of a pre-existing condition *is compensable* if it arises primarily out of the employment, meaning the employment contributed more than 50% in causing the aggravation. Shown to a reasonable degree of medical certainty means that the employment more likely than not caused the aggravation when considering all causes. Tenn. Code Ann. § 50-6-102(A)-(D).

Dr. Hutchison testified the accident caused only an "exacerbation" of Ms. Edwards's knee symptoms but no anatomic change. However, he did not record Ms. Edwards's pre-accident history and did not "know for certain that she did or did not have symptoms" before. He did say Ms. Edward's pain complaints were consistent with someone who "has an accident which causes an exacerbation of underlying symptoms." Without contrary proof, the Court finds the only cause of Ms. Edwards's symptoms was the accident.

Moreover, Dr. Sweo said Ms. Edwards's knee injuries and need for treatment were more than 51% related to the accident. Importantly, he related the problems in both knees to the accident, notwithstanding what he said about the fracture in the left knee. In the context of Ms. Edwards's credible testimony regarding her symptoms, Dr. Sweo's opinion is more compelling.

The Court finds these facts fit within *Blevins v. S. Champion Tray, LP,* 2019 TN Wrk. Comp. App. Bd. LEXIS 29 (July 11, 2019), where the Workers' Compensation Appeals Board stated that the "relevant questions [were] whether the incident at work caused an aggravation of Employee's pre-existing condition and whether that aggravation arose primarily out of her employment." In *Blevins*, the treating physician testified the employee suffered no anatomical change as a result of an accident. However, there was "no indication in the record that he compared post-accident diagnostic tests with any pre-accident tests." *Id.* at *14. Moreover, the Appeals Board found that "a pre-existing condition that is made symptomatic by a work injury may be found to be compensable even in the absence of medical proof of an anatomical change if there is a progression or aggravation of the condition that causes disabling pain." *Id.* That was true even though the treating physician stated that "greater than 51% of the causation" was related to the pre-existing condition. Instead, the Board found the physician's "opinion [was] inconsistent with undisputed facts and [did] not take into account that an aggravation of a pre-existing condition can be compensable under certain circumstances." *Id.*

The same is true here, Dr. Hutchison incorrectly asserted that an exacerbation of a pre-existing condition is never compensable and should not be treated under workers' compensation. But, as in *Blevins*, his opinion is inconsistent with the facts, and he did not consider that Ms. Edwards's arthritis was not disabling until the accident.

Further, another physician in *Blevins* "linked Employee's symptoms to the work incident and provided an opinion that the employment 'more likely than not' caused her need for medical treatment." *Id.* at \*14-15. The Appeals Board noted that while that opinion might have been "insufficient to establish causation by a preponderance of the evidence at trial," it was, when "considered with Employee's lay testimony . . . sufficient evidence to rebut the presumption of correctness accorded the authorized physician's causation opinion" and allowed a finding that the employee would likely prevail at a hearing on the merits. *Id.* at \*15. The Court finds the same is true here and holds Ms. Edwards is entitled to benefits for her knee injuries.

As to reimbursement of medical expenses for the left knee replacement, an employer who elects to deny a claim runs the risk that it will be held responsible for medical benefits obtained from a provider of the employee's choice. *Young v. Young Elec. Co.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 24, at \*16 (May 25, 2016). Here, Ms. Edwards sought treatment from Dr. Sweo after Peoplease denied her claim. The Court holds Peoplease shall pay Ms. Edwards's medical bills related to the left knee replacement as set forth in paragraph 1 below and payment for the right knee replacement recommended by Dr. Sweo.

### *Chest and foot injuries*

Both Drs. Hutchison and Sweo testified that Ms. Edwards did not need treatment for the chest injury. Dr. Sweo said the same regarding the foot injury. Thus, the Court finds no basis to order payment for further evaluation and/or treatment of those injuries at this time.

### *Temporary total disability*

To recover temporary total disability benefits, Ms. Edwards must establish (1) that she became disabled from working due to a compensable injury; (2) a causal connection between the injury and her inability to work; and (3) the duration of the period of disability. *Hibbitts v. Kim Royal d/b/a Royal Guttering*, 2021 TN Wrk. Comp. App. Bd. LEXIS 10, at \*6 (Mar. 23, 2021).

Dr. Sweo related Ms. Edwards's disability to the injury and restricted her from work as of September 24, 2020. Though it contested the work relation, Peoplease did not contest the period of Ms. Edwards's disability. Thus, the Court finds Ms. Edwards is entitled to temporary total disability from September 24, 2020, to the present, and until she is released to return to work or placed at maximum medical improvement.

Further, Ms. Edwards contended, without contravention, that Peoplease paid her at the incorrect rate of $486.87 from August 22, 2020, to September 15, 2020, a period of three weeks and three days. The Court finds Ms. Edwards is entitled to payment of a

shortfall in temporary total disability in the amount of $978.65 for that period. (Stipulated rate of $772.31 per week less $486.87 rate paid for 3.42 weeks).

*Mileage reimbursement*

Ms. Edwards submitted a mileage log to and from various appointments. Many of these trips were fewer than fifteen miles from her home and not recoverable under Tennessee Code Annotated section 50-6-204(a)(6)(A). Further, some trips were to and from locations other than medical providers, including her return home from the accident scene and to the Bureau's office in Jackson. The Court excluded those trips, as itemized by Ms. Edwards in Exhibit 3, and sets forth the recoverable mileage in paragraph 5 below.

**IT IS, THEREFORE, ORDERED** as follows:

1. Peoplease shall reimburse Ms. Edwards for the following medical bills incurred for the left knee replacement:
   - Jackson Radiology Assoc. $60.97
   - Northstar Anesthesia PA $3,556.80
   - JMCGH $6,549.68
   - JMCGH $40,334.60
   - Sports Orthopedics & Spine $1,465.09
   - Fast-Pace Camden $50.00

2. Peoplease shall authorize and pay for a right knee replacement as recommended by Dr. Sweo.

3. Peoplease shall pay Ms. Edwards temporary total disability for the period of September 24, 2020, through the present, a period of sixty-three weeks and six days, at the stipulated rate of $772.31 per week, or $49,311.99. Payments shall continue until she is released to return to work or placed at maximum medical improvement.

4. Peoplease shall pay a shortfall in temporary total disability for the period of August 22, 2020, to September 14, 2020, in the amount of $978.65.

5. Peoplease shall reimburse Ms. Edwards for mileage expenses incurred in the following trips to and from medical providers at the applicable statutory rate of $.47 per mile:
   - September 14, 2020-Dr. Hutchison-120 miles
   - September 24, 2020-Dr. Sweo-120 miles
   - November 17, 2020-Dr. Sweo-120 miles
   - November 20, 2020-Dr. Sweo-120 miles
   - December 2, 2020-Dr. Sweo-120 miles

- December 31, 2020-Dr. Sweo-120 miles

6. The Court sets a Status Hearing on **Monday, March 28, 2022**, at **9:30 a.m. Central time**. The parties must call 731-422-5263 or toll-free 855-543-5038 to participate in the hearing.

7. Unless an interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit by email at WCCompliance.Program@tn.gov.

**ENTERED December 22, 2021**.


_____
**Judge Allen Phillips**
**Court of Workers' Compensation Claims**

**APPENDIX**

Exhibits:
1. Deposition of Dr. Jason Hutchison
2. Deposition of Dr. Timothy Sweo
3. Collective Medical Records
4. Itemization of total medical billing
5. Itemization of unpaid medical bills and mileage
6. Mileage log
7. Photographs of accident
8. E-mails from employer
9. Request by Ms. Edwards for a notice of denial form

Technical Record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing with Ms. Edwards's affidavit
4. Transfer Order
5. Motion to Add Subsequent Injury Fund
6. Response of Subsequent Injury Fund

7. Order Adding Subsequent Injury Fund and Remanding Case to Mediation
8. Order Continuing Expedited Hearing and Second Referral to Mediation
9. Second Dispute Certification Notice
10. Employer's Witness List
11. Employer's Brief
12. Employee's Witness and Exhibit List
13. Subsequent Injury Fund's Brief
14. Employee's Brief

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent as indicated on December 22, 2021.

| Name | Email | Service Sent To: |
| --- | --- | --- |
| Charles L. Hicks, Employee's Attorney | X | office@hickslawfirm.net<br>assistant@hickslawfirm.net |
| Stephen Morton, Employer's Attorney | X | stephen.morton@mgclaw.com<br>Amber.dennis@mgclaw.com |
| Art D. Wells, SIF Attorney | X | art.wells@tn.gov |

_Penny Shrum_

**Penny Shrum, Court Clerk**
**wc.courtclerk@tn.gov**

9



<u>Expedited Hearing Order Right to Appeal</u>:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board.  To appeal an expedited hearing order, you must:

1.  Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed.  When filing the Notice of Appeal, you must serve a copy upon all parties.

2.  You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3.  You bear the responsibility of ensuring a complete record on appeal.  You may request from the court clerk the audio recording of the hearing for a $25.00 fee.  If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal.  Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal.  The statement of the evidence must convey a complete and accurate account of the hearing.  The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board.  If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4.  If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence.  The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement.  All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury: _____**

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies). Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____     ☐ Motion Order filed on _____

☐ Compensation Order filed on_____     ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____    2. Address: _____

3. Telephone Number: _____    4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

6. I am employed by: _____

    My employer's address is: _____

    My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning _____ |
| SSI | $ _____ per month | beginning _____ |
| Retirement | $ _____ per month | beginning _____ |
| Disability | $ _____ per month | beginning _____ |
| Unemployment | $ _____ per month | beginning _____ |
| Worker's Comp. | $ _____ per month | beginning _____ |
| Other | $ _____ per month | beginning _____ |

9. My expenses are:

Rent/House Payment $ _____ per month    Medical/Dental  $ _____ per month

Groceries         $ _____ per month    Telephone       $ _____ per month

Electricity       $ _____ per month    School Supplies $ _____ per month

Water             $ _____ per month    Clothing        $ _____ per month

Gas               $ _____ per month    Child Care      $ _____ per month

Transportation    $ _____ per month    Child Support   $ _____ per month

Car               $_____ per month

Other             $ _____ per month (describe: _____ )

10. Assets:

Automobile            $ _____    (FMV) _____

Checking/Savings Acct. $ _____

House                 $ _____    (FMV) _____

Other                 $ _____    Describe:_____

11. My debts are:

| Amount Owed | To Whom |
| --- | --- |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____

APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____

NOTARY PUBLIC

My Commission Expires:_____

LB-1108 (REV 11/15)                                    RDA 11082